[Civ. No. 26506. First Dist., Div. One. May 5, 1970.]

MORGAN G. KEATON, Plaintiff and Respondent, v.
JOAN WILBURN KEATON, Defendant and Appellant.

**COUNSEL**

Spencer W. Strellis and Maurice Engel for Defendant and Appellant.

Francis H. Ollerdessen for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Joan Keaton appeals from a judgment declaring that her husband Morgan Keaton "could not be and is not, the father" of a child born to her on March 20, 1968.

The parties were married March 24, 1967. A stipulation entered into at the trial recited: "They lived together from March 24, 1967, until the date of separation, July 9, 1967. From the period of June 1, 1967, until the period of June 10, approximately, 1967, Mr. Keaton was absent from the family home on business, continuously. Mr. Keaton, if called to the stand, would testify that from the period of June 1, 1967, up to and including today, he has not had marital relations with Mrs. Keaton, or intercourse. And Mrs. Keaton, if called to the stand, would testify that from the period of June 10, 1967, until the time of separation on July 9, 1967, the parties did have intercourse." Over Joan's objection the trial court admitted in evidence a laboratory report on a "Paternity Exclusion Test." This test of the blood of Morgan, Joan, and the child, indicated that Morgan could not be the natural father.

 Joan contends that the trial court erred in admitting the blood tests in evidence. She relies on Evidence Code section 621, which states: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."

Section 621 codifies a centuries-old principle that the integrity of the

family, when husband and wife are living together as such, should not be impugned. The husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant. Moreover, Legislatures and courts have been understandably hesitant in such cases about weighing probabilities of paternity and chose in that manner to resolve doubts in favor of the child's legitimacy. (See *Kusior* v. *Silver,* 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]; *S. D. W.* v. *Holden,* 275 Cal.App.2d 313, 316 [80 Cal.Rptr. 269]; 56 Colum. L. Rev. 1741-1742.)

The conclusive presumption now found in section 621 has been widely criticized. It has been said to be "grounded on hypocrisy and untruths" (*Wareham* v. *Wareham,* 195 Cal.App.2d 64, 83 [15 Cal.Rptr. 465]), that it has become a demonstrable fiction and an obvious bar to the truth (McBaine, Cal. Evidence (2d ed. 1960), § 1273), and is contrary to modern social attitudes and scientific advancement (19 Hastings L.J., p. 971). However, the rule is just as stoutly defended. It has been held to be "a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child. There are significant reasons why the integrity of the family when husband and wife are living together as such should not be impugned." (*Kusior* v. *Silver, supra,* 54 Cal.2d 603, 619; see also *S. D. W.* v. *Holden, supra,* 275 Cal.App.2d 313, 316-317.)

We need not add our voice to the debate whether section 621 is truly in the public interest. The law of California is made clear by the positive language of that section and by the authority of *Kusior* v. *Silver, supra,* 54 Cal.2d 603. Our duty as an intermediate appellate court extends no further than the application of that law to the case before us.

The court in *Kusior* v. *Silver* was dealing with the parent statute to Evidence Code section 621. The earlier statute, Code of Civil Procedure section 1962, subdivision 5 (repealed, effective Jan. 1, 1967) provided: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is *indisputably* presumed to be legitimate." The language of the two sections is identical except that the word "indisputably" (here italicized by us) was changed in the later section to the word of substantially similar meaning, "conclusively."

*Kusior* v. *Silver* (p. 620) held that where the conditions of Code of Civil Procedure section 1962, subdivision 5—a "wife cohabiting with her husband who is not impotent"—exist, "the result of blood tests . . . may not

be used to controvert the conclusive presumption of paternity created by" that section.

No evidence of Morgan's impotency was offered at the trial and no contention of such impotency is here made. Upon Morgan would rest the burden of producing such proof since he is the party who would have peculiar means of such knowledge. (See *S. D. W.* v. *Holden, supra,* 275 Cal.App.2d 313, 316.) ▆ The word "cohabiting" as used in the code section we are discussing means " 'living together as husband and wife.' " (*Kusior* v. *Silver, supra,* 54 Cal.2d 603, 616.) ▆ Here it is stipulated that the parties "*lived together* from March 24, 1967 until the date of separation, *July 9, 1967.*" (Italics added.) The child was born eight months and 11 days after the date of separation. The trial court found conception to have occurred on or about *July 1, 1967,* well within the stipulated period of cohabitation. It follows that the conditions for the application of Evidence Code section 621 existed.

Morgan has mistakenly placed reliance on *Jackson* v. *Jackson,* 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289], which concerned a period of marital cohabitation of about four days' duration where the results of a blood test were held to be permissible evidence. The court there held that the husband was entitled to prove that a child was not "the issue of a wife cohabiting with her husband" during the four-day period that they were together. Such proof that the child was not conceived during that period could be made by a blood test and "other evidence." The blood test might indicate; the court said, no conception by union with the husband, while the "other evidence" might be proof, by testimony of the husband, that no other male had sexual access to the wife during the short honeymoon. It is obvious that such a combination of evidence, if believed, would establish that the child was not conceived during the four-day period, and therefore not "the issue of a wife cohabiting with her husband," a prerequisite for the operation of the statute.

A clear implication of *Jackson* v. *Jackson* should be noted: If during the four days of cohabitation with her husband, the wife had in fact conceived as a result of sexual intercourse with another man, the conclusive presumption of the statute that the husband was the father would nevertheless apply, regardless of any blood test result. Thus, *Jackson* v. *Jackson* affirms and follows the strict interpretation given the statute by *Kusior* v. *Silver, supra,* 54 Cal.2d 603.

The rule applicable to this case, as pointed out by *Kusior* v. *Silver, supra,* and *Jackson* v. *Jackson, supra,* follows: Although the blood tests with other

evidence were admissible on the issue whether conception did in fact occur during cohabitation of the spouses, when the trial court found that conception *did so occur,* the conclusive presumption of legitimacy attached by virtue of section 621. The trial court erred in not applying the conclusive presumption.

The judgment is reversed; the superior court will enter judgment in favor of defendant Joan Keaton.

Molinari, P. J., and Sims, J., concurred.