[Civ. No. 26935. First Dist., Div. One. May 21, 1970.]

SHIRLEY ROSE LOUIS, Plaintiff and Appellant, v.
BARRY EDWARD LOUIS, Defendant and Respondent.

COUNSEL

Gupta & Gupta and Ruth Church Gupta for Plaintiff and Appellant.

Molly H. Minudri for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—This appeal concerns the application of Evidence Code section 621 which became effective January 1, 1967, and reads as follows: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate." The section is a reenactment of Code of Civil Procedure section 1962, subdivision 5 (repealed as of January 1, 1967) of identical language, except that the earlier statute carried the word *"indisputably"* instead of *"conclusively."* The meaning remains unchanged.

These sections have repeatedly been construed by our appellate courts. "Cohabiting" has the settled meaning of living together as husband and wife (*Kusior* v. *Silver,* 54 Cal.2d 603, 612-613 [7 Cal.Rptr. 129, 354 P.2d

657]), and, absent impotency of the husband, where a child is conceived during such cohabitation, *by whatever male seed,* a conclusive presumption that the child is legitimate, and the husband its father, attaches. The husband is the *legal* father even though biologically the fact may be otherwise. (*Jackson* v. *Jackson,* 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289]; *Kusior* v. *Silver, supra; Keaton* v. *Keaton, ante,* p. 214 [86 Cal.Rptr. 562]; *S. D. W.* v. *Holden,* 275 Cal.App.2d 313 [80 Cal.Rptr. 269]; *Hess* v. *Whitsitt,* 257 Cal.App.2d 552 [65 Cal.Rptr. 45].)

Shirley Rose Louis obtained an interlocutory decree of divorce against her husband Barry Edward Louis on October 3, 1966. On October 9, 1967, in her declaration for a final decree, she recited that, looking toward a reconciliation, she "lived together" and "cohabited with" Barry from "approximately March 30, 1967 to August 15, 1967" at which time they finally separated. Impliedly finding Shirley's contention that Barry had failed in a promise to refrain from further acts of cruelty to be true, the court on October 10, 1967, entered a final decree of divorce.

On February 2, 1968, Shirley, pursuant to Code of Civil Procedure section 473, noticed a motion to set aside the final decree of divorce. She alleged: "This motion is made on the ground that at the time plaintiff executed her Declaration for Final Judgment of Divorce, she was not aware that she had conceived a child during the period of reconciliation referred to in her Declaration; plaintiff has now been advised by her physician that she is in fact pregnant and that the child is expected early in March, 1968." She sought the entry of a new or amended final decree providing that Barry pay certain pregnancy and birth expenses and thereafter support the child.

The child was born May 27, 1968, 286 days after final separation and prior to any determination of Shirley's motion. Thereafter at Barry's request the court ordered that both parties and the child submit to blood tests pursuant to Evidence Code section 892. These blood tests indicated that Barry could not be the father of the child.

Following a hearing on Shirley's motion at which there was no issue of Barry's impotency, the court ruled that the conclusive presumption of Evidence Code section 621 was inapplicable "in this case where there was an interlocutory decree entered based on the complaint filed by the plaintiff." Holding, for that reason, Barry had a right to establish he was not the child's father, the court admitted into evidence the blood test results. On the basis of those tests Shirley was denied the requested relief. She appeals from an order denying her motion and adjudging Barry not to be the father of her child.

The subject procedings, although taking the form of a petition for relief from a judgment entered by "mistake, inadvertence, surprise, or excusable neglect" (Code Civ. Proc., § 473), were in substance an action taken to establish paternity and for the support of the child. Civil Code section 137.1 (repealed, effective Jan. 1, 1970; reenacted in substance, effective Jan. 1, 1970, as Civ. Code, § 4703), as applicable here, provided that when a father has the duty to provide for the support of a child and willfully fails to so provide, the mother may maintain an action against the father for such support.

■ Shirley contends that the trial court erred in ruling Evidence Code section 621 to be inapplicable "to facts existing after entry of an interlocutory decree of divorce" and in admitting evidence of the blood tests.

■ It has been consistently held in this state that the entry of an interlocutory decree of divorce does not dissolve the marriage. Such a decree does no more than establish a right to a final decree at a later date. (See *Olson* v. *Superior Court,* 175 Cal. 250, 252 [165 P. 706, 1 A.L.R. 1589]; *Estate of Smith,* 241 Cal.App.2d 205, 209 [50 Cal.Rptr. 374]; *Brown* v. *Brown,* 177 Cal.App.2d 387, 388 [2 Cal.Rptr. 255]; *Green* v. *Green,* 66 Cal.App.2d 50, 57 [151 P.2d 679].) ■ Following the interlocutory decree of the case at bench the parties "cohabited" and "lived together" as alleged by Shirley and not denied by Barry. No policy reason appears why such attempts at reconciliation should accomplish a relationship of something less than, or different from, "marriage," or "cohabitation." Indeed, such efforts are favored by the law; the statutory waiting period following an interlocutory decree is designed to encourage a resumption of the marital state.

We hold that during the period following the interlocutory decree in which the parties lived together, they were husband and wife, cohabiting with each other. It follows that section 621 applies to issue conceived during that period, and that the trial court erred.

Since the subject order must be reversed and the cause remanded for further proceedings we point out that the issue on retrial will be the question whether the child was in fact conceived by any male person during the parties' post-interlocutory decree cohabitation. The blood tests will be admissible as evidence that the conception was not by Barry. (See Evid. Code, §§ 890-897; *Jackson* v. *Jackson, supra,* 67 Cal.2d 245; *Keaton* v. *Keaton, supra, ante,* p. 214.) Any other competent and relevant evidence may be offered to prove or disprove the occurrence of conception prior to August 15, 1967. Such evidence may consist of testimony by either party as to whether or not the wife had sexual intercourse, or opportunity therefor, with another man during the period in question. (See *Jackson* v.

*Jackson, supra, Keaton* v. *Keaton, supra.*) In addition, expert testimony or judicial notice (see Evid. Code, § 452, subd. (h)) may have significant bearing on the question whether conception more probably occurred before or after separation of the parties.

If the court shall find that the child was not conceived during cohabitation of the parties, Barry will, of course, prevail. If the court concludes that the child was conceived during cohabitation of the parties, the blood tests will no longer be before the court for any evidentiary purpose; by virtue of Evidence Code section 621 it will be conclusively presumed that the child is legitimate, and that Barry is the father. (See *Jackson* v. *Jackson, supra,* 67 Cal.2d 245; *Kusior* v. *Silver, supra,* 54 Cal.2d 603; *Keaton* v. *Keaton, supra, ante,* p. 214; *S. D. W.* v. *Holden, supra,* 275 Cal.App.2d 313; *Hess* v. *Whitsitt, supra,* 257 Cal.App.2d 552.)

The order entered December 31, 1968, is reversed; the cause is remanded for further proceedings not inconsistent with the opinions herein expressed.

Molinari, P. J., and Sims, J., concurred.