[Crim. No. 11039. Fourth Dist., Div. One. Feb. 5, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS A. THOMPSON, Defendant and Appellant.

## COUNSEL

Robert H. Lynn, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Karl Phaler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—After trial by the court, defendant Thomas Thompson was found guilty of willful failure to support his minor son (Pen. Code, § 270). He appeals contending trial court error in upholding the constitutionality of and applying the conclusive presumption of paternity found in Evidence Code section 621[1] in this, a criminal prosecution. Thompson asserts the conclusive presumption deprives him of the presumption of innocence.

At trial Thompson and the People stipulated to the foundational facts of Evidence Code section 621: Thomas and Winona Thompson were married on April 15, 1973; a child, Jaysen Thompson, was born of Winona on August 14, 1975; Thomas and Winona cohabited from April 15, 1973, until June 1, 1976; at the time of Jaysen's conception, Thompson was neither impotent nor sterile. In addition Thompson stipulated he had been able to support Jaysen during the periods charged in the complaint but he did not do so because he does not believe he is Jaysen's biological father.

[1]Section 621 provides: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."

Thompson then made an offer of evidence which, if believed, could raise a reasonable doubt as to his biological fatherhood of Jaysen.[2] The People objected to the evidence's admissibility under Evidence Code section 621. The trial court sustained the objection holding Evidence Code section 621 may be constitutionally applied in a criminal proceeding. Thompson was then found guilty of violating Penal Code section 270.

For several reasons Thompson's contentions are untenable. In the first place, the judicial interpretations of Evidence Code section 621 (and its predecessor section Code Civ. Proc., § 1962, subd. (5)) find and accept a clear and unmistakable legislative intent to mandate rejection by a court of evidence offered to rebut the conclusive presumption of legitimacy, excepting only matters directed to, probative of the foundational facts upon which the presumption must be based.

Support for this conclusion is found in *Hill* v. *Johnson*, 102 Cal.App.2d 94, 95 [226 P.2d 655], a civil action for child support brought against a third party. The finding that Johnson was the father of the child was "repelled" by the conclusive presumption. The appeal court enforced Code of Civil Procedure section 1962, subdivision (5), stating: "Evidence is inadmissible to rebut a conclusive presumption [of legitimacy]." (*Id.*, at p. 95.) Further, the court said: "[I]llegitimacy cannot be established by evidence that a husband and wife, while living together, did not have sexual relations" (*ibid.*), and "[i]t was error to admit the evidence [blood tests] since it is contrary to the conclusive presumption of legitimacy" (*id.* at p. 96).

In *Kusior* v. *Silver*, 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657], a core issue was the admissibility of blood tests in a paternity proceeding where preliminary facts triggering the applicability of the conclusive presumption of paternity of Code of Civil Procedure section 1962, subdivision (5), were conceded.

The Supreme Court held blood tests were inadmissible where the conclusive presumption applied. Such presumption was "a substantive rule of law" which is constitutional "unless it transcends such a power of the Legislature." (*Kusior* v. *Silver, supra,* at p. 619.) The Legislature has the power to determine as a matter of overriding social policy, given a

---

[2]The proffered evidence included: If the wife, Winona Thompson, were called to testify, she would state she is unsure whether Thompson is the biological father of Jaysen. The tendered evidence does not challenge the preliminary fact base necessary to apply the presumption.

certain relationship between husband and wife, the husband is to be held legally responsible for the child. (*Ibid.*) Although the blood test might prove conclusively the legal husband was not the biological [father], such proof would not be permitted. "There are significant reasons why the integrity of the family when husband and wife are living together as such should not be impugned." (*Ibid*; see also *Keaton v. Keaton,* 7 Cal.App.3d 214 [86 Cal.Rptr. 562]; *People v. Sorensen,* 68 Cal.2d 280 [66 Cal.Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093]; *S. D. W. v. Holden,* 275 Cal.App.2d 313 [80 Cal.Rptr. 269]; *People v. Russell,* 22 Cal.App.3d 330, 335-336 [99 Cal.Rptr. 277]; *Jackson v. Jackson,* 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289]; *County of San Diego v. Brown,* 80 Cal.App.3d 297, 303 [145 Cal.Rptr. 483].)

■ The conclusion is inescapable; in California proceedings, "[t]he husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant." *Keaton v. Keaton, supra,* 7 Cal.App.3d 214, 216.)

■ Is this presumption applicable with equal force in criminal proceedings? In 1965, the Legislature restated without substantive change the conclusive presumption of legitimacy of Code of Civil Procedure section 1962, subdivision (5), in Evidence Code section 621. "It is assumed that [the section's] retention serves to reiterate a legislative belief in a social policy that stresses the importance of 'legitimacy' of children." (*The Uniform Parentage Act: What it Will Mean for the Putative Father in California* (1976) 28 Hastings L.J. 191, 220.)

Moreover, the Legislature placed the presumption in the Evidence Code applicable to both criminal and civil proceedings unless a particular provision specifically provides otherwise. (Evid. Code, §§ 12, 105.) In *People v. Russell, supra,* 22 Cal.App.3d 330, 336, the court said: "Section 621 is not, by express terms, limited to civil actions, nor is there anything in the context in which it is used to so indicate."

This placement in the Evidence Code confirmed earlier court decisions applying the conclusive presumption of paternity in criminal prosecutions where an essential element of the crime was a parent-child relationship.

The Supreme Court, in *People v. Koller,* 142 Cal. 621 [76 P. 500], at least by implication, assumed the conclusive presumption applied to the crime of incest. And in *People v. Hamilton,* 88 Cal.App.2d 398 [198 P.2d 907], the court held the jury verdict finding Hamilton guilty of incest was

based on the jury's belief he was not absent during the essential period of conception [of his daughter] and therefore the conclusive, not disputable, presumption applied. (*Id.,* at p. 400.)

Finally, in *People* v. *Russell, supra,* 22 Cal.App.3d 330, 335, the appeal court (again, in an incest case) points to the "inescapable conclusion" that the conclusive presumption of legitimacy applies to criminal proceedings, reasoning: "The 'so-called conclusive presumption is really not a presumption but rather a rule of substantive law' [citations] and was adopted by the Legislature to preserve the integrity of the family and to avoid the social stigma associated with illegitimacy. [Citations.] If the presumption is founded on salutary public policy, and if it is in reality a rule of substantive law, it follows that Penal Code section 285 not only proscribes sexual intercourse between persons actually related by the prohibited blood lines, but also proscribes sexual intercourse between persons the law deems to be so related. It would be patently inconsistent to hold that in civil actions involving child support and other fundamental issues personal rights are subordinated to the rights of innocent children and valued social attitudes, but in a prosecution for incest the defendant may wantonly attack the integrity of a mother for alleged indiscretions long forgotten and may brutally challenge the legitimacy of the innocent child he may have seduced by turning the criminal prosecution into a full scale paternity suit. We decline to make this unwarranted and illogical distinction."

The foregoing traverse of the legislative history as well as judicial interpretations compel this conclusion. The conclusive presumption of Evidence Code section 621 is applicable to criminal prosecutions.

 This finding of the legislative intent does not end our labor, for Thompson questions the constitutionality of section 621. He asserts it transcends the power of the Legislature, it violates due process concepts.

Thompson concedes, as he must, the wealth of California authority holding this conclusive presumption meets due process requirements in civil actions. He argues, however, due process in a criminal proceeding requires stricter scrutiny of a rule that has the effect of relieving the prosecution from its burden of proving the defendant guilty beyond a reasonable doubt.

In analysis of the question posed, our point of beginning is found in these fundamentals: "In a prosecution under Section 270 of the Penal

Code, paternity is an essential element of the crime . . . ." (*People* v. *Sorensen, supra,* 68 Cal.2d 280, 285; *Patterson* v. *Municipal Court,* 232 Cal.App.2d 289, 294 [42 Cal.Rptr. 769]) and proof beyond a reasonable doubt of every element of a criminal charge is constitutionally required (*In re Winship,* 397 U.S. 358, 362, 364 [25 L.Ed.2d 368, 374-375, 90 S.Ct. 1068]; *Coffin* v. *United States,* 156 U.S. 432, 453 [39 L.Ed. 481, 491, 5 S.Ct. 394]).

It was stated in *People* v. *Lachman,* 23 Cal.App.3d 1094, 1097 [100 Cal.Rptr. 710]: "A statutory presumption affecting the burden of proof in a criminal cause does not alter the People's duty to prove defendant's guilt beyond a reasonable doubt. It merely allows proof of an ultimate fact by permitting that fact to be presumed from proof of a preliminary fact. Whether the ultimate fact is proved by direct evidence or by a presumption which arises from proof of a preliminary fact, the defendant's burden of rebuttal remains the same: he need only raise a reasonable doubt as to the sufficiency of the proof of the ultimate fact."

The demands of due process are inflexible as to the burden of proof imposed upon the People and compel this conclusion: The conclusive presumption of paternity under Evidence Code section 621 does not diminish by one whit the People's burden to prove the defendant guilty beyond a reasonable doubt on each element of the crime. Nor is a defendant to be denied the opportunity to repel the application of the presumption.

■. Further, if it be conceded that Evidence Code section 621 does affect the burden of proof—by authorizing an ultimate fact to be presumed from proof of a preliminary fact—then use of such presumption in a criminal cause may infringe on due process of law if there is no rational connection between the basic facts giving rise to the presumption and the presumed fact. There is no rational connection "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." (*Leary* v. *United States,* 395 U.S. 6, 36 [23 L.Ed.2d 57, 82, 89 S.Ct. 1532]; *United States* v. *Gainey,* 380 U.S. 63, 66-67 [13 L.Ed.2d 658, 662-663, 85 S.Ct. 754, 757]; *Tot* v. *United States,* 319 U.S. 463, 466 [87 L.Ed. 1519, 1523, 63 S.Ct. 1241].)

"[T]he legislative power to create presumptions against the defendant, even though they relate to an element of the crime, is well established, subject to the constitutional requirement of a rational connection

between the fact proved and the additional fact presumed." (Witkin, Cal. Evidence (2d ed. 1966) Presumption Establishing Element of Crime, § 223, p. 202.)

"Of course, the state may provide that proof of one fact shall be prima facie evidence of another; but this can be done consistently with the due process of law clause of the Fourteenth Amendment only where there is a rational relation between the two facts." (*Ferry* v. *Ramsey,* 277 U.S. 88, 96 [72 L.Ed. 796, 799, 48 S.Ct. 443].)

The court examined the nature of that "rational connection" between the fact conclusively presumed by Evidence Code section 621 and the proven facts in *County of San Diego* v. *Brown, supra,* 80 Cal.App.3d 297, 306, 307, and concluded "a rational connection exists between conception of the child by a woman during marriage, during cohabitation with a nonimpotent husband, and the ultimate fact of paternity of that man." (*Ibid.*)

While County of *San Diego* v. *Brown, supra,* was a civil case, yet the same reservoir of common experience that tells us it is more likely than not, given the preliminary facts, that the cohabiting husband is the father, supports the Legislature's constitutional authority to apply Evidence Code section 621 to criminal proceedings.

It would be patently inconsistent to find "a rational connection" between the presumed fact and the proven facts in a civil case but develop judicial myopia, lose sight of those reasonable probabilities of fatherhood when the same given facts are viewed in the setting of a criminal prosecution. The rational basis supporting the application of Evidence Code section 621 in civil cases does not fade away in a Penal Code section 270 proceeding.

A separate and distinct law base supports the constitutionality of Evidence Code section 621 against the charge of denial of due process. This premise, for its strength, looks to the nature of the offense defined by the Legislature in Penal Code section 270 when read *in pari materia* with Evidence Code section 621. Penal Code section 270 provides "If a *parent* of a minor child willfully omits, without lawful excuse to furnish necessary clothing, food, shelter or medical attendance . . . he or she is guilty of a misdemeanor. . . ." (Italics added.)

Thompson's offer of proof, his assertion of denial of due process, is bottomed on an unexplored assumption that the Legislature in its use of the words "parent of a minor child" intended to limit criminal responsibility to the "biological" or "natural" mother or father. It is true that in any prosecution under Penal Code section 270, *paternity* is an essential element of the crime. (*Patterson* v. *Municipal Court, supra,* 232 Cal.App.2d 289, 294; *People* v. *Sorensen, supra,* 68 Cal.2d 280, 289.)

This easy first premise does not dispose of the question of whether the Legislature intended that "blood," "biologic," or "natural" paternity be the sole and requisite specie of parenthood that must be proved to sustain a conviction under Penal Code section 270. To the contrary, the California Supreme Court in *People* v. *Sorensen, supra,* 68 Cal.2d 280, 284, held: "Under the facts of this case, the term 'father' as used in section 270 cannot be limited to the biologic or natural father as those terms are generally understood. The determinative factor is whether the legal relationship of father and child exists." The Supreme Court found Sorensen was the lawful "father" of a child conceived through artificial insemination and born during his marriage to the child's mother. "The construction thus placed upon the word 'father' does not distort the statutory language . . . ." (*Id.,* at p. 288.) "[T]he intent of the Legislature obviously was to include every child . . . and enforce the obligation of support against the person who could be determined to be the *lawful* parent."[3] (*Id.,* at pp. 284-285; italics added.)

The *Sorensen* definition of "father" in a criminal proceeding is supported by a multitude of civil cases. In *Louis* v. *Louis,* 7 Cal.App.3d 851, 853 [86 Cal.Rptr. 834], the court said: "The husband is the *legal* father even though biologically the fact may be otherwise. (*Jackson* v. *Jackson,* 67 Cal.2d 245 [citation]; *Kusior* v. *Silver, supra;* *Keaton* v. *Keaton, ante,* p. 214 [citation]; *S. D. W.* v. *Holden,* 275 Cal.App.2d 313 [citation]; *Hess* v. *Whitsitt,* 257 Cal.App.2d 552 [citation].)"

Further in support of the conclusion that proof of biologic parenthood is not an essential element of proof of guilt of Penal Code section 270—is in fact irrelevant—we note the Legislature in 1953, in adopting in part the Uniform Act on Blood Tests to Determine Paternity (then Code Civ. Proc., §§ 1980.1-1980.7, now Evid. Code, §§ 890-897), deliberately omitted section 5 of the act, which provides: "The presumption of legitimacy of a child born during wedlock is overcome if the court finds

---

[3]A 1974 amendment to Penal Code section 270 substituted the word "parent" for "father" where it appears in the first and third paragraphs.

that the conclusions of all the experts, as disclosed by the evidence based upon the [blood] tests, show that the husband is not the father of the child." *(9 U. Laws Ann. 112.)*

Finally, when in 1965, the Legislature incorporated the presumption of legitimacy in Evidence Code section 621—applicable to both criminal and civil proceedings—it was presumptively aware of the previous judicial decisions holding the husband to be the "legal father" although the biologic facts were otherwise. It was adopted by the Legislature to preserve the integrity of the family and to avoid the social stigma associated with illegitimacy. *(Estate of McNamara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313].) It is a rule of substantive law which when read in conjunction with the critical language of Penal Code section 270 leads to this conclusion: The intent of the Legislature was to include not only biologic parents but also those persons who stand in the *legal* relationship of parent and child. To Sorensen, "father" of a child conceived by artificial insemination, we add the Evidence Code section 621 "parent" conclusively so presumed where the basic facts are established to the degree required by due process. There is no question but that the Legislature has the authority to define crimes and persons responsible. Therefore as Penal Code section 270 is construed by us, the Legislature has chosen a broader spectrum of legal relationships to a minor child for imposition of criminal responsibility for nonsupport. Thus when the Legislature was reenacting Evidence Code section 621—applicable to criminal proceedings—in 1965, it was doing no less than it had plenary authority to do when it enacted Penal Code section 270. The conceded constitutional authority to enact Penal Code section 270, though greater, included the constitutional authority to create the lesser—a conclusive presumption of liability under specified circumstances. *(Ferry v. Ramsey, supra,* 277 U.S. 88.)[4]

One further task remains—to apply this conclusive presumption of paternity in the criminal trial setting. Since Evidence Code section 621 was invoked against Thompson to prove a presumed fact that is an

---

[4]This Holmesian approach was suggested by Dean Robert Kingley (Justice Kingley): "[I]f the California Legislature enacted a statute which in effect stated that regardless of parentry, illegitimacy, or any other fact, when a man married he would be liable for the financial support of *any* child born of his wife while the marriage was undissolved and any such child's inheritance rights would be preserved, the irrational approach of fictional legitimacy now being adhered to by [the] courts would no longer be needed in order to satisfy at least one of the public policy reasons supporting the present interpretation of our law.". Bois, *California's Conclusive Presumption of Legitimacy,* (1962) 35 So.Cal.L.Rev. 437, 471.)

essential element of the crime charged, Evidence Code section 607 requires proof of the *basic* fact giving rise to the presumption *beyond* a reasonable doubt. This degree of proof of all the basic facts is necessary before the presumption becomes operative.

If the basic facts are evidenced to the degree of proof beyond a reasonable doubt, the *burden of proof* then shifts to the defendant with respect to the nonexistence of the presumed fact. Evidence Code section 607 recognizes that a defendant sustains that burden by introduction of evidence to simply *raise a reasonable doubt* as to the existence of the presumed fact. The instructions to be given the jury where the prosecution invokes an Evidence Code section 621 presumption are the presumption itself, together with the foregoing burden of proof rules applicable to the People and the defendant. (Jefferson, Cal. Evidence Benchbook, p. 818.)[5]

We conclude the trial court properly ruled Thompson's proffered evidence inadmissible.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 9, 1979.

---

[5]Where the jury in a criminal case refuses to follow the presumption instruction, no recourse exists as in a civil case. Nevertheless, correct instructions are required to be given.